## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 18, 1920.

MARY G. GOLLERY
VS.
JOSEPH J. GOLLERY.

*Duvall & Baldwin* for plaintiff.
*Solomon Mendels* for defendant.

DAWKINS, J.—

A divorce can not be granted upon the uncorroborated testimony of the complainant. This case is probably to a large extent one of the tragedies of the war. Both parties seemed to have worked hard to obtain a competency until the war came when the husband went overseas.

Cruelty and adultery are alleged. An absolute divorce is sought. It will be unnecessary to go over the testimony tending to establish certain acts of cruelty on the part of the husband towards the wife, for if such acts took place they were fully and completely condoned by the conduct of the wife when the husband was compelled to go to camp—by her conduct towards him during his stay at Camp Meade—the affectionate parting when he left for France—the acceptance of the war allotment and the mutual regard and love indicated by the correspondence that passed between the parties during the early part of the stay in France, so that there is no ground for a divorce a mensa et thoro, even though it might be granted under the prayer in this bill if the testimony were sufficient to entitle the complainant to it.

The only question in the case is whether or not there is sufficient proof of adultery to entitle the complainant to a divorce a vinculo matrimonii.

The wife says she went to work when the husband went to France at the place where he formerly was employed and saw certain misconduct between men and women there employed which led her to suspect that her husband had been guilty of the same misbehavior with the same women who were there working. She subsequently found out from a colored man, Edward Duffy, that he had seen the respondent do the same things with the same women in the same room, in which the wife saw the misconduct. Duffy testified that he saw the respondent hug and kiss one of the women and saw other men and women who worked in the place indulging in unseemly conduct at the lunch half-hour —also that he saw the respondent with his arm around one of the women in another place outside of the room. Duffy also testified that he drank during this time as much as two gallons of gin every day. The only evidence therefore of adultery is the above statement of Duffy, the utility man about the working place. All of his statements are denied by at least four or five persons, as well as the respondent himself. The respondent says that Duffy had stated that the statements made by him to the complainant as well as testified to by him at the hearing were "a pack of lies." The respondent says that the main cause of trouble between him and his wife before going to war was on account of a man named H—— that he objected to his wife going with this party. It is clear she had been with him before the husband left. As soon as the husband left this country, she says she went to H——'s house as a home, stating that she was paid for the services rendered to H——'s children, and yet the most serious outburst of what was called "grouchiness" or bad temper in the market was because of this man and the wife being together in the lunch room. Circumstances that would indicate a rather loose way of living might be mentioned when a young woman was permitted to get in the bed with the complainant and respondent at the home before the trip to France, and when the act of familiarity between the complainant and H——, told of by Miss C., took place. These might reflect on the right of the complainant to claim equitable relief. There is a great preponderance of evidence offered by the respondent denying all of the essential facts stated by the plaintiff and by those who have testified on her behalf. Many of these denials are to be expected. The conflicting statements are impossible to reconcile. For the purposes of the case it is unnecessary to attempt to do it, or to characterize which of the many statements can not be believed, yet the fact remains that practically the only proof of anything tending to establish the act upon which the relief is sought rests solely upon the statement of one man of the character mentioned, which statement is denied by several persons. No one has said that there was ever any meeting of the husband and Miss C., outside of the working place. If any "opportunity" was availed of it must to have been during the half-hour in the middle of the day at which other persons were often at least in

the same room. This would hardly measure up to the "opportunities" in the Schufelt case in 86 Md., relied on by the plaintiff's counsel. Whilst opportunity has been held as strong proof of the commission of the offense, yet in the face of the testimony in this case such opportunity has not been shown to have been given.

There must be clear and convincing proof and upon a state of facts that satisfactorily establish the guilt of the defendant. There should be a presumption of innocence. As was said in Hawkins case in 65 Md., statements of witnesses somewhat of the character of the only one in this case, must be taken with much caution. The burden of establishing the guilt rests upon the complainant. It is useless to discuss the testimony in detail as the principles governing this case are so clearly laid down in such cases as Kremelberg, 52 Md.; Theis, 124 Md., and Patterson, 132 Md., which declare that the carnal act must be proven to the satisfaction of a discreet person, that there can be no doubt of the failure of the complainant to meet the burden of proof. Feeling that the case has not been proven to entitle the relief prayed to be granted the bill is dismissed.